UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

JOHN S. SCHUPP,                                    )
                                                   )
                    Plaintiff,                     )
                                                   )
v.                                                 )        No. 4:14 CV 679 JMB
                                                   )
CAROLYN W. COLVIN,                                 )
Acting Commissioner of Social Security,            )
                                                   )
                    Defendant.                     )

**MEMORANDUM AND ORDER**

        John S. Schupp ("Plaintiff") appeals a final determination by the Commissioner of Social

Security ("Commissioner") that he is not disabled under the Social Security Act ("the Act") (42

U.S.C. § 401 *et seq*.)  This Court has jurisdiction over the matter under 42 U.S.C. § 405(g) and

with the consent of the parties pursuant to 28 U.S.C. § 636(c).  Because the final decision of the

Commissioner is supported by substantial evidence on the record as a whole, it is affirmed.

**I.     Procedural History**

        Plaintiff is a sixty two year-old man who alleges disability due to a "bad back," heart

problems, high blood pressure, and anxiety/depression.  (Tr.[1] 830)  Plaintiff originally filed for

Disability Insurance Benefits ("DIB") on August 7, 2006.  (Tr. 97)  An Administrative Law

Judge ("ALJ") issued an unfavorable decision on April 11, 2008.  (Tr. 99-112)  Thereafter,

Plaintiff filed a timely request for review with the Appeals Council.  On November 26, 2008, the

Appeals Council granted review and remanded the case.  (Tr. 116-18)  A second ALJ issued

another unfavorable decision ALJ on December 19, 2009, again denying benefits.  (Tr. 11-24)

---

[1]        "Tr." refers to the administrative record filed by Defendant with her Answer. (ECF No. 11-1 through 11-34)

Again, Plaintiff timely requested review of the ALJ's decision. (Tr. 7-10)  This time, however, the Appeals Council denied review of the decision. (Tr. 1-4)

At that point, Plaintiff filed a civil action in this Court.[2]  The Court reversed the decision of the Commissioner, remanding it because the ALJ had not conducted a function-by-function analysis of Plaintiff's Residual Functional Capacity ("RFC").  (Tr. 894-916)  The Appeals Council in turn remanded the case "for further proceedings consistent with the order of the court," including offering a new hearing to Plaintiff, and requiring the ALJ to "take any further action needed to complete the administrative record and issue a new decision."  (Tr. 919)

A third ALJ convened a hearing on November 18, 2013, pursuant to the remand order, at which Plaintiff appeared (with counsel) and testified.  An impartial vocational expert ("VE") also testified.  (Tr. 825)  The third ALJ issued a new, unfavorable decision on January 7, 2014.  (825-839)  The ALJ found that Plaintiff was not under a disability within the meaning of the Act as of the date he was last insured—September 30, 2006.  (Tr. 826)  Because Plaintiff did not file exceptions to this most recent decision, and the Appeals Council did not assume jurisdiction, the January 7, 2014 decision is the final decision of the Commissioner.  Plaintiff timely filed for review in this Court.

## II.     Statement of Issues and Summary of Decision

As noted above, this case is before the Court for the second time.  Thus, while the general issue in this appeal remains whether Defendant's disability determination is supported by substantial evidence on the record as a whole, the issues have narrowed on this second appeal. Although the parties articulate the two main issues somewhat differently, the substantive dispute between them is summarized as follows:

---

[2]     The Honorable Terry I. Adelman, United States Magistrate Judge, presided over that matter, with the consent of the parties under 28 U.S.C. § 636(c).  (4:10-cv-01903-TIA ECF No. 1)

(1) Whether the determination of the third ALJ that Plaintiff can engage in light work violates the "law of the case" doctrine because the second ALJ had previously found that Plaintiff can only engage in sedentary work; or, as Plaintiff puts it: whether a re-determination of Plaintiff's RFC category exceeded the scope of the previous remand order in this case; and

(2) Whether the third ALJ's function-by-function analysis of Plaintiff's RFC limitations violated the Court's order by failing to articulate Plaintiff's ability to push and pull, and whether the RFC analysis is therefore unsupported by substantial evidence.

For the reasons herein, the Court finds:

(1) That the latest ALJ's determination of Plaintiff's RFC category did not violate the "law of the case" doctrine, and was within the scope of the Court's remand order; and

(2) The latest function-by-function RFC analysis complies with the Court's previous order in this case and is supported by substantial evidence.

## III.    <u>Background Factual Matters</u>

As noted above, Plaintiff is a sixty two-year-old man who alleges disability due to a "bad back," heart problems, high blood pressure, and anxiety/depression. (Tr. 830) Plaintiff is a former nurse, who last worked full-time in 2001 at Missouri Baptist Hospital, in Sullivan, Missouri. Plaintiff left his employment to care for his mother full-time until she died in 2004. (Tr. 64) Plaintiff also admitted to working part-time as a substitute teacher after he left his full-time nursing job.[3] The undersigned notes that this Court's previous decision addressed the underlying medical evidence in this case thoroughly. The undersigned has reviewed those findings and adopts them herein. The undersigned will nonetheless review the medical evidence

---

[3]     The ALJ believed that there was some evidence in the record to suggest that Plaintiff was a landlord, and received rental income. (Tr. 852) Plaintiff denied this allegation, however, and for purposes of this case, this Court will assume that Plaintiff was not employed as a landlord.

again here, but will concentrate on the evidence most directly relevant to the RFC at issue, and the evidence that has been newly adduced since the last remand from this Court.

### A. **Medical Evidence**

#### 1. **Back Issues**

The medical evidence shows that, at the date of last insured, Plaintiff suffered from some mild medical impairments related to his back.  For example, on June 4, 2004, Plaintiff had x-rays done on his back which showed mild degenerative change and mild scoliosis.  (Tr. 398)  Also, an MRI of Plaintiff's lumbar spine on September 13, 2005 showed mild degenerative disc disease and facet arthropathy.  However, there was no significant narrowing of the canal or neural foramina or stenosis. (Tr. 319)  Other MRIs similarly showed mild degenerative changes and small left posterolateral and foramina disk herniation at L3-4.  (Tr. 389, 574, 687)

In keeping with the mild nature of the disease, a neurosurgeon who saw him in 2005 recommended pain management treatment, not surgery.  (Tr. 561)  In fact, Plaintiff's primary care provider, Dr. Jose Remo M.D., had been doing something similar—during an office visit on August 20, 2004, Dr. Remo increased Plaintiff's Norco dosage as treatment for his degenerative disc issues.  (Tr. 338)

Plaintiff did not seek treatment from a pain management specialist, however, until May of 2007.  (Tr. 422-27)  Similarly, Plaintiff was supposed to start physical therapy treatment for his lower back and left leg pain in June of 2004 and go three times a week.  (Tr. 393)  But after two no call/no show appointments on July 6 and 8, 2004, the physical therapist terminated Plaintiff from treatment on July 29, 2004.  (Tr. 396)

## 2.  **Coronary Issues**

Plaintiff complained about chest pain early in 2005; but the evidence demonstrates that his treating physicians had difficulty pinpointing a cause for his claimed pain.  He underwent cardiac catheterization with angioplasty and stenting on January 5, 2005.  (Tr. 581)  Plaintiff's pain resolved the day after the procedure.  (Tr. 581, 594)  A stress test was undertaken in the fall of 2006, "which was entirely within normal range.  No evidence of ischemia nor infarct."  (Id.)  Plaintiff continued to complain about chest pain, however, so a second cardiac catheterization was performed in February of 2007.  The results showed that the stents were open and the second stent appeared improved since the 2005 procedure.  The opinion of John Groll, M.D. (Plaintiff's cardiologist), was that Plaintiff's chest pain was not coronary in nature.  (Id.)

On March 19, 2007, Dr. Groll emphasized that Plaintiff had mild coronary artery disease with a normal left ventricle ejection fraction.  He emphasized the word "mild" by underlining it four times.  (Tr. 580)  The claimant was diagnosed with stable coronary artery disease with stable stents.  Dr. Groll noted again that Plaintiff's purported symptoms were not consistent with heart disease, given his normal stress test in 2006 and catheterization results.  Dr. Groll thought Plaintiff's chest pain might be psychological.  (Tr. 580)  Further such reports came in July 2007, with Dr. Groll reporting that Plaintiff had stable coronary disease and a patent stent, with occasional chest pain that was not related to coronary disease.  (Tr. 579)  Echocardiogram results from December of 2007 provided results consistent with this analysis.  (Tr. 577)

## 3.  **Anxiety/Depression Issues**

While Plaintiff did not originally allege any mental health impairments when he filed for benefits, he subsequently alleged, during hearings, and in his submission of medical evidence, that he indeed suffered from some mental health impairments.  It appears that Plaintiff's primary

care provider, Dr. Remo, provided most of the mental health treatment. Dr. Remo reported treatment for anxiety and depression issues in 2006, which seem to stem from family issues around that time. (Tr. 430-31)

On April 16, 2007, Dr. Remo referred Plaintiff to a psychiatrist for treatment. Plaintiff finally saw a psychiatrist on August 22, 2007, when he saw Dr. Chinya Muralyi. (Tr. 430-31) This was nearly a year after his date of last insured. Plaintiff evidently responded well to treatment, because at a follow-up visit on October 24, 2007, Dr. Muralyi noted that Plaintiff's affect was "brighter" and his symptoms were "improving."

In a function report filed on August 25, 2006, Plaintiff admitted some evidence relevant to his alleged mental impairments. As it relates to his social functioning, Plaintiff said he is able to go to church, attend some school events for his children, and go shopping. Plaintiff also said he does not like to be alone, but had no difficulty getting along with others. Finally, in the function report, Plaintiff admitted that he is able to pay attention for an hour, and could follow directions, but said he might need them repeated, and he was unable to tolerate changes in his routine. (Tr. 228-35)

**B. <u>Medical Opinion Evidence</u>**

**1. <u>Dr. Remo</u>**

The records of Plaintiff's treatment relationship with Dr. Remo date back to February of 2006. Plaintiff saw Dr. Remo on and off over the next several years. On February 26, 2008, well after the date of last insured, Dr. Remo submitted opinion evidence on behalf of Plaintiff, saying that Plaintiff suffered from Type 2 Diabetes, Peripheral Vascular Disease with venous insufficiency, hypertension with possible hypertensive cardiovascular disease, major depression, dyslipidemia, and anxiety. (Tr. 738) Dr. Remo also said that progression of Plaintiff's medical

problems, specifically the lower back pain and anxiety/depression, had occurred over the previous two years, and that Plaintiff's activities had progressively declined. (Tr. 727-28)

Dr. Remo then filled out a Physical Residual Function Capacity Questionnaire dated February 26, 2008. (Tr. 536-42) In the questionnaire, Dr. Remo opined that Plaintiff was incapable of performing even low stress jobs, that he had deficits in attention and concentration that precluded even simple work tasks, that he could only walk half a block, sit or stand for twenty minutes at a time, walk for thirty minutes at a time, and needed a job that allowed him to alternate positions at will. Dr. Remo also opined that Plaintiff needed to elevate his legs for 80% of the day and required the use of an assistive device to walk. Dr. Remo opined that Plaintiff would need to take unscheduled breaks every thirty minutes, and that the breaks would last for fifteen minutes. He then opined that Plaintiff could only occasionally lift up to ten pounds, and only frequently lift less than ten pounds. Dr. Remo further opined that Plaintiff could only occasionally move his neck, rarely climb ladders or stairs, and never twist, stoop, or squat. Dr. Remo also found that Plaintiff would miss work more than four days a month. (Id.)

### 2. **Dr. Stoecker**

On November 7, 2006, Ruth Stoecker, M.D., a State agency consultant, reviewed the medical records in Plaintiff's case and concluded that Plaintiff was capable of performing a range of medium work. (Tr. 410-15) Dr. Stoecker noted that many of the symptoms that Plaintiff reported, such as those consistent with radiculopathy, were not supported by medical evidence such as MRIs. Dr. Stoecker also noted that the objective medical tests showed, at most, slight abnormalities.

In formulating an RFC, Dr. Stoecker concluded that Plaintiff could occasionally lift fifty pounds, frequently lift twenty-give pounds, and stand and walk about six hours in an eight-hour

workday.  (Id.)  Dr. Stoecker noted that Plaintiff can sit about six hours in an eight-hour workday and has unlimited capacity to push and/or pull other than shown.  To support this, Dr. Stoecker noted how Plaintiff did not report back pain to his treating physician and made no request for treatment with pain medication in September of 2003.  She also noted that Plaintiff cancelled physical therapy appointments and failed to seek pain clinic referrals.  (Id.)

### 3. Dr. Poetz

On July 28, 2009, Plaintiff underwent an evaluation by Dr. Robert Poetz, D.O.  (Tr. 808-15)  Dr. Poetz found that Plaintiff suffered from numerous serious impairments, such as multi-level lumbar degenerative disc disease with a small posterolateral and foramina disc herniation at L3-4, coronary artery disease, diabetes, hypertension, and major depression.  (Tr. 811-12)  Ultimately, Dr. Poetz opined that Plaintiff "is unable to maintain gainful employment due to his multiple health conditions."  (Id.)

## C. Hearing Testimony

There have been three different administrative hearings in this case.  The first hearing was on February 28, 2008.  (Tr. 57-96)  Plaintiff was represented by counsel, and testified in support of his application.  Plaintiff's wife and a VE also testified.

At the 2008 hearing, Plaintiff described his daily activities, which included getting up when his children went to school, eating a bowl of cereal or toast, and watching television.  Plaintiff then napped until 10:00 or 11:00 am.  As he talked about his disability, Plaintiff claimed that his bad back would limit him to standing for 5-10 minutes, or walking 50-60 feet.  Plaintiff claimed that he had to change postural positions every 5-10 minutes due to discomfort.

The second hearing was on October 1, 2009.  (Tr. 30-56)  Plaintiff was represented by counsel, and testified in support of his application; a VE also testified.  At the second hearing,

Plaintiff's attorney introduced evidence and argument regarding recent medical opinions from Drs. Remo and Poetz. (Tr. 33-35) Plaintiff also provided more detail concerning his medical impairments, some of which were diagnosed after the date of last insured, such as diabetes and his need to walk with a cane. (Tr. 43-45)

The third hearing was held on November 18, 2013. Plaintiff again testified and was represented by counsel. A VE also testified. Plaintiff's testimony regarding his injuries and limitations was largely duplicative of his testimony at the two earlier hearings. (Tr. 831) Plaintiff did, however, testify in greater detail about the exertional, postural, and skill requirements of his previous job as a surgical nurse. (Tr. 856-60) This was relevant because it apparently caused the VE to classify Plaintiff's previous work as a nurse as "very heavy," when nursing work is usually classified as medium work. (Tr. 862)

The VE testified that—considering Plaintiff's age, education, work history, and RFC—he could work as: (1) an office helper (DOT number 239.567-010, with 1,810 jobs in the region, 83,250 nationally); (2) a photocopy machine operator (DOT number 207.685-014, with 1,930 jobs regionally and 66,280 nationally); and (3) a recreation aid (DOT number 195.367-030, with 4,460 jobs regionally, and 253,110 nationally).[4] (Tr. 865)

---

[4]     In her question to the VE, the ALJ formulated the RFC somewhat more generically than it is described in her decision. The ALJ said "[t]he claimant's medical records and testimony suggest that he is functionally limited to light exertional work. He should avoid ropes, ladders, and scaffolding. He should avoid hazardous heights. There is some indication of minimal treatment for a mental impairment. Giving the claimant the widest possible latitude in presenting his application for disability, I find that on September 30th, 2006, the claimant was limited to unskilled work." (Tr. 865)

        In her written decision, however, the ALJ found the following RFC: "on September 30, 2006, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that the claimant could lift and carry twenty pounds occasionally and ten pounds frequently. He could stand or walk for six hours out of an eight-hour workday. He could sit for six hours out of an eight-hour workday. The claimant must avoid hazards of heights and climbing ropes, ladders, or scaffolds. The claimant could understand, remember, and carry out at least simple instructions and non-detailed tasks. (Tr. 829)

        The Court notes the difference between the hypothetical question posed to the VE and the RFC as stated in the ALJ's decision, even though Plaintiff has not raised any issue regarding this difference. As noted below, the difference does not amount to cognizable error in this case.

*(Continued…)*

**IV.** **The ALJ's Decision**

In assessing whether Plaintiff was entitled to disability benefits, the ALJ followed the familiar five step process laid out in the Commissioner's regulations. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity on the alleged onset date and the date of last insured. (Tr. 827)

At Step Two, the ALJ found that Plaintiff suffered from multiple severe impairments, including "degenerative disc disease, coronary artery disease status post angioplasty and stenting, and anxiety/depression." (Id.)

At Step Three, the ALJ found that none of those severe impairments, either individually or in combination, met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P Appendix 1. Thus, Plaintiff was not presumptively disabled. (Tr. 828)

At Step Four, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) in that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; he could stand or walk for six hours out of an eight-hour workday; and he could sit for six hours out of an eight-hour workday." (Tr. 829) Additional limitations included the finding that Plaintiff "must avoid hazards of heights and climbing ropes, ladders, or

---

An ALJ has an obligation to ask a VE a question regarding the availability of work that accurately conveys a plaintiff's RFC, because otherwise, the VE will give an answer that does not take into account all of the limitations of the plaintiff, and may therefore give an inaccurate answer as to the availability of jobs for someone with that particular RFC. Here, however, the differences between the RFC as found in the decision, and the RFC posed to the VE are semantic and immaterial. The RFC as found in the decision merely recites the material requirements of light work that are found in the CFR at § 404.1567(b). The lifting and carrying requirements are the same; and the additional RFC limitations found in the decision, such as avoiding ropes and hazardous heights, were conveyed in the question to the VE, as noted above.

Additionally, the disparity between the verbal RFC limitation of "unskilled work" that was presented to the VE and the written RFC limitations of "remembering, and carrying out at least simple instructions and non-detailed tasks," is semantic, because the two standards are substantively equivalent. See Howard v. Massanari, 255 F.3d 577, 581-82 (8th Cir. 2001) (noting that "while the hypothetical question must set forth all the claimant's impairments, it need not use specific diagnostic, or symptomatic terms where other descriptive terms can adequately define the claimant's impairments"); and Tomlin v. Colvin, 2015 WL 58934 (E.D.Mo. 2015) (finding that the difference between "unskilled work" and the ability "to understand, remember and carry out at least simple instructions and non-detailed tasks" was "semantic" and harmless error).

scaffolds.  The [Plaintiff] could understand, remember, and carry out at least simple instructions and non-detailed tasks."  (Id.)

Because Plaintiff retained some capacity to work, the ALJ's Step Four analysis proceeded to consider Plaintiff's ability to do his previous work.  The ALJ found that Plaintiff "was unable to perform any past relevant work." (Tr. 837)  The ALJ then moved on to Step Five.

The ALJ found that Plaintiff was "an individual closely approaching advanced age" (he was 53 at the time of the date of last insured), and that he had at least a high school education, and was able to communicate in English.  On the basis of Plaintiff's past work experience and RFC, along with the testimony of the VE, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed through the date of last insured.  Accordingly, the ALJ found Plaintiff not disabled.  (Id.)

In making these determinations, the ALJ made several credibility determinations.  She discounted the credibility of Plaintiff, especially regarding his subjective complaints about the extent of his symptoms.  (Tr. 831)  The ALJ also discounted the opinion evidence of Plaintiff's primary care provider, Dr. Remo, and Dr. Poetz, Plaintiff's examining doctor.  The ALJ gave "some weight" to the opinion of the state agency's consulting doctor, Dr. Stoecker.  (Tr. 834-36)

**V.      Standard of Review and Legal Framework**

This Court reviews the final decision of the Commissioner to ensure that it is supported by substantial evidence on the record as a whole.  See 42 U.S.C. § 405(g); and Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994).  Substantial evidence is "less than a preponderance but is enough that a reasonable mind would find it adequate to support the commissioner's conclusion."  Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

Thus, the decision of the Commissioner may not be reversed solely because this Court might have decided the case differently. Id. at 1022. Instead, a reviewing court must determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the Commissioner's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001).

Additionally, this Court will determine whether the Commissioner faithfully applied the required five step process to determine disability status. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process). Steps One through Three require the claimant to prove: (1) he is not currently engaged in substantial gainful activity; (2) he suffers from a severe impairment; and (3) his disability meets or equals a listed impairment. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his previous work. If the claimant proves he cannot do so, then the burden switches to the Commissioner at Step Five to prove that there is work in the national economy that the claimant can do, considering his age, work experience, education, and RFC. Id.

## VI. Discussion

As noted earlier, the two substantive issues between the parties in this case are: (1) whether the RFC classification for light work was precluded by the law of the case doctrine and the District Court's previous remand order; and (2) whether an RFC that neglects to specify findings regarding the ability to push and pull violates the District Court's remand order and—more generally—whether such an RFC violates the Commissioner's regulations requiring a "function-by-function" analysis. For the reasons discussed below, this Court finds that the RFC

for light work was not precluded by the law of the case doctrine or the previous remand order of the District Court; and the RFC does not violate the District Court's remand order requiring a function-by-function analysis and is supported by substantial evidence.

**A. The ALJ's RFC Assessment for Light Work Did Not Violate the Law of the Case Doctrine or the District Court's Remand Order**

Plaintiff's first argument is that the ALJ's most recent determination of an RFC for light work was impermissible because the previous ALJ had determined an RFC for sedentary work in 2009. In substance, Plaintiff argues that the Commissioner was precluded from going back and reconsidering the RFC for sedentary work because of the law of the case doctrine, and because such a determination violates the Court's remand order. This Court addresses both of those points in turn.

**1. Law of the Case Doctrine**

The law of the case doctrine generally prevents re-litigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings. This doctrine applies to administrative agencies on remand. Hulsey v. Astrue, 622 F.3d 917, 924 (8th Cir. 2010). The purposes of the doctrine are to protect the settled expectations of the parties, ensure uniformity of decision, and promote judicial efficiency. Maxfield v. Cintas Corp., No. 2, 487 F.3d 1132, 1134-35 (8th Cir. 2007).

The law of the case doctrine is inapplicable here for several reasons. First, the prior decision of this Court did not affirm the previous ALJ's finding that Plaintiff was capable of performing a full range of sedentary work. To the contrary, the Court's remand order concluded that the prior ALJ's RFC determination was not supported by substantial evidence. This Court remanded the matter to the Commissioner because the RFC determination required further clarification and explanation. (Tr. 914-15) Only final and settled decisions previously made by

a court that are subject to the law of the case doctrine. See Steahr v. Apfel, 151 F.3d 1124, 1125 (8th Cir. 1998) (noting that only "settled issues in a case" are subject to the law of the case doctrine, and that a District Court would have to "actually find" the presence of a limitation before the administrative agency would be bound by that determination on remand from a District Court). Here, there was no final or settled decision regarding Plaintiff's RFC.

Further, the regulations themselves provide that any issues relating to the disability claim may be reconsidered by the ALJ whether or not they were raised in the administrative proceedings leading to the original final decision in the case. See 20 C.F.R. § 404.983. Also, section 404.977(b) provides that, on remand, an ALJ may take any action that is not inconsistent with the Appeals Council's remand order. In this case, the Appeals Council's remand order was broad, requiring only that the ALJ offer Plaintiff a new hearing, and that the ALJ take the steps necessary to complete the administrative record. (Tr. 919)

## 2. **The District Court's Remand Order**

Plaintiff characterizes the substantive dispute between the parties not as a general "law of the case" issue. Instead, Plaintiff argues that the reconsideration of the RFC category was precluded by the District Court's remand order. In this Court's view, that is functionally another way of characterizing the same substantive dispute. And the Court comes to a similar answer— the Court's remand order did not preclude a reconsideration of the RFC category.

The Court's remand order found that the entire RFC was flawed, because the analysis was not sufficient to support the finding. The RFC was therefore not supported by substantial evidence. With the entire RFC therefore vacated, the Court ordered the ALJ to undertake the assessment again, and go into further function-by-function detail. (Tr. 914-15) Thus, the remand order from this Court directed the ALJ to re-determine the RFC, in accordance with the

proper evidence and function-by-function analysis.[5]  On remand, the third ALJ did that.  The fact

that the third ALJ saw the evidence differently from the second ALJ is not a sufficient cause for

remand, assuming that the third ALJ's determination is supported by substantial evidence on the

record as a whole.  See Culbertson v. Shalala, 30 F.3d 934, 940 (8th Cir. 1994) (upholding an

ALJ's decision that weighed the evidence differently from a prior ALJ, where the second

determination was supported by substantial evidence).

**B.  The Latest RFC for Light Work is Supported by Substantial Evidence**

Having decided that a re-evaluation of the RFC category in this case was permissible, the

Court next analyzes whether an RFC for light work is supported by substantial evidence.  The

ALJ arrived at her decision after analyzing the credibility of Plaintiff, the opinion evidence of the

medical professionals, and the objective medical evidence in the case.  This Court will discuss

the ALJ's findings in those categories, taking them in turn.

**1.  Plaintiff's Credibility**

In assessing Plaintiff's Residual Functional Capacity ("RFC"), the ALJ found that

Plaintiff's "medically determinable impairments could reasonably be expected to cause the

alleged symptoms."  (Tr. 831)  The ALJ found, however, that Plaintiff's assertions regarding the

intensity, persistence, and limiting effects of the symptoms were "not entirely credible."  (Tr.

831)  In discounting Plaintiff's credibility, the ALJ focused time and again on the inconsistency

between the severity that the Plaintiff alleged, and the mild nature of the objective medical

---

[5]        Finally, this Court notes that under Eighth Circuit precedent, it is within this Court's province to interpret
the scope of the previous remand order.  See Steahr v. Apfel, 151 F.3d 1124, 1126 (8th Cir. 1998) ("the district court
is best able to determine whether its mandate has been violated by an ALJ on remand, and we will defer to the
district court's interpretation of its own remand order").

evidence.  The ALJ also considered the factors in <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir.

1984).[6]

The ALJ's determination regarding Plaintiff's credibility in this case was in accordance

with the law.  As discussed above, Plaintiff's complaints of debilitating back pain at the end of

September 2006 are belied by the fact that the objective medical evidence, including MRIs and

x-rays, showed only mild degenerative back problems.  (Tr. 398, 574)  Other evidence in the

record supports a conclusion that Plaintiff's back problems were mild.  For example, a

neurosurgeon opined that Plaintiff did not need surgery.  Furthermore, Plaintiff's own conduct

was inconsistent with disabling symptoms.  Plaintiff did not seek out specialist treatment, even

when he was referred for such treatment.  Plaintiff failed to follow-up with physical therapy.

Plaintiff was able to participate in activities such as wood-working and playing paintball as well.

The ALJ considered all of these <u>Polaski</u> factors.  (Tr. 833)  With this combination of factors, the

ALJ properly discounted Plaintiff's credibility because his complaints of disabling back pain

were "inconsistent with the evidence as a whole."  <u>Casey v. Astrue</u>, 503 F.3d 687, 695 (8th Cir.

2007).

Substantial evidence also supports the ALJ's decision to discount Plaintiff's subjective

complaints of coronary pain.  For instance, in relation to Plaintiff's coronary issues, the ALJ

noted that "the claimant underwent cardiac catheterization with angioplasty and stenting on

January 5, 2005.  Then, the claimant's pain resolved the next day…. [A]fter the procedure, there

is no evidence of any significant impairment on the alleged onset date."  (Tr. 832)

---

[6]     Although she did not recite the factors verbatim, or specifically refer to the case by name, the ALJ's
credibility analysis complied with the <u>Polaski</u> rubric.  This is permissible.  <u>See</u> <u>Partee v. Astrue</u>, 2011 WL 1485489
at *4 (8th Cir. 2011) ("The ALJ is not required to discuss methodically each <u>Polaski</u> consideration" so long as the
ALJ examines those considerations before discounting subjective complaints).

Plaintiff's allegations were also discredited by his own treating cardiologist. Dr. Groll wrote: "The patient says that he has had chest discomfort ever since the stenting. However review of records demonstrates that the chest pain preceded the stenting, which is why the procedure was undertaken in January 2005." (Tr. 832) Thus, the pain was "not coronary in nature." (Id.) The ALJ also noted that Dr. Groll had found "the claimant was not forthcoming with accurate facts when alleging a 2005 onset of pain that continued through the alleged onset date and into 2007." (Id.) A further example comes from Dr. Groll's note on March 19, 2007, that Plaintiff had "mild" coronary disease—the word "mild" was underlined four times. (Id.)

Finally, with regard to his alleged mental impairments, Plaintiff testified (as did his wife) to serious anxiety and depression issues. The ALJ noted that Plaintiff only sporadically sought treatment for those issues, and then only from his primary care provider, as opposed to a specialist. (Tr. 836) It was not until August 22, 2007, nearly a year after his date last insured, that Plaintiff sought specialist treatment for a supposedly severe impairment. Failure to seek treatment is a proper grounds upon which to discount Plaintiff's subjective allegations of disability. Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989).

The ALJ's analysis is in accord with the governing legal framework established by Polaski. The ALJ compared Plaintiff's subjective complaints with the objective medical evidence. The ALJ also discussed how Plaintiff did not seek out treatment without significant gaps, and was not compliant in treatment (such as physical therapy), which is another grounds for discounting credibility.[7] Thus, in addition to the objective medical evidence, the "evidence as a whole" supported a discounting of Plaintiff's subjective claims. See Casey, 503 F.3d at 695.

---

[7]     Indeed, even apart from its effect on Plaintiff's credibility, "failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004); see also, 20 C.F.R. § 416.930(b) ("if you do not follow the prescribed treatment without a good reason, we will not find you disabled").

## 2. <u>Credibility of Other Medical Opinion Evidence</u>

In formulating her RFC, the ALJ discounted the testimony of Plaintiff's treating physician, Dr. Remo. (Tr. 834) In reviewing the propriety of this action, the Court notes that a "treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." <u>Hamilton v. Astrue</u>, 518 F.3d 607, 610 (8th Cir. 2008). Additionally, the Commissioner's regulations require the ALJ to give reasons for giving weight to, or rejecting the statements of, a treating physician. <u>See</u> 20 C.F.R. § 404.1527(c)(2). The Court notes that the ALJ may properly discount or disregard the opinion of a treating physician like Dr. Remo if "other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." <u>Hamilton</u>, 518 F.3d at 610.

The ALJ discounted Dr. Remo's testimony primarily because she believed it was based on Plaintiff's subjective complaints at appointments after the alleged onset date and because the medical records were inconsistent with Dr. Remo's opinion testimony. Further, Dr. Remo's opinion was inconsistent with some other evidence, such as Dr. Stoecker's opinion, which the ALJ gave some weight to. (Tr. 835) In viewing the record as a whole, there is substantial evidence to support the ALJ's decision in this regard. As the ALJ notes, the medical records are inconsistent with the opinions offered by Dr. Remo. Some of the listed impairments that Dr. Remo used in formulating his opinion, such as diabetes and peripheral vascular disease, were not diagnosed until 2008, and there is no evidence that they were present on or before the date last insured. (Tr. 454-57)

More broadly, Plaintiff's actions in not seeking specialist treatment, or complying with treatment orders, provide evidence of only mild symptomology which is inconsistent with Dr. Remo's diagnoses, which in turn provides a permissible basis for the ALJ to discount Dr. Remo's opinion evidence.  See Brown v. Barnhart, 390 F.3d 535, 540-41 (8th Cir. 2004) (noting that where a plaintiff is "noncompliant with prescribed treatment," that that fact serves to discredit the treating physician's opinion that the claimant was disabled).  For instance, as noted above, Plaintiff was told by Dr. Remo and a neurosurgeon to see a pain management doctor, but he never did so until May 2007, after filing his disability application.  Plaintiff's lack of treatment for the supposedly "disabling" back pain is inconsistent with Dr. Remo's assertions.  Plaintiff was also directed to undergo physical therapy but failed to do so.  (Tr. 425)

Finally, Dr. Remo's assertion that Plaintiff was incapable of performing even low stress jobs or completing even simple work tasks due to mental impairments is not supported by the record.  Plaintiff did not receive psychiatric treatment until August 2007.  Before that date, Plaintiff reported primarily only family-related problems.  Even in 2007, Plaintiff did not exhibit particularly disabling symptoms.  Moreover, during his treatment, Dr. Remo never limited the Plaintiff in any way through the date of last insured.  It was not until Plaintiff requested an assessment indicating that he was disabled, two days before his first hearing, that Dr. Remo reported significant functional limitations.  Those limitations were not found in any of his prior treatment records.  (Tr. 835)

Thus, the medical evidence, when viewed in its entirety, does not support Dr. Remo's assertions regarding Plaintiff's disabilities, and the ALJ's treatment of his opinion is in accordance with the applicable law.  See Papesh v. Colvin, 786 F.3d 1126, 1132-33 (8th Cir. 2015) ("the ALJ may discount or even disregard the opinion…where other medical assessments

are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions").

As regards other opinion evidence, the ALJ gave the opinion of Dr. Stoecker, a State agency consultant, "some weight." (Tr. 835) In support of this finding, the ALJ stated that Dr. Stoecker provided an "excellent analysis of the evidence." (835-36) The ALJ further noted that Dr. Stoecker accurately pointed out inconsistencies between Plaintiff's allegations and the objective medical evidence, such as when he reported symptoms to the doctor consistent with radiculopathy upon straight leg raise tests, but the MRI reports showed no abnormalities consistent with such a finding. Dr. Stoecker also noticed a discrepancy between Plaintiff's assertions that he could not engage in any hobbies and the fact that he injured his finger working in his wood shop in April 2005. (Tr. 836) The ALJ, however, rejected Dr. Stoecker's finding that Plaintiff had a "medium" residual functional capacity as "excessive." (Id.)

The law requires the ALJ to give such agency consultants some weight in disability determinations. See Papesh, 786 F.3d at 1133-34, and 20 C.F.R. § 404.1527(e)(2)(i). Because the law requires a well-reasoned opinion of a state agency consultant that is supported by evidence in the record to be entitled to weight, the determination of the ALJ in relation to Dr. Stoecker's opinion was proper.

The ALJ properly gave no weight to the opinion of Dr. Poetz. (Tr. 836) Dr. Poetz examined Plaintiff years after his date of last insured. Similarly, Dr. Poetz based his opinion on diagnoses made after Plaintiff's date of last insured, namely, diabetes, cellulitis, and chronic fungal infections. (Tr. 836) Dr. Poetz could only speculate whether these diagnoses were present in 2004, because there was no objective medical evidence to support such a contention. See Jones v. Chater, 65 F.3d 102, 104 (8th Cir. 1995) (noting that where the impairment onset

date is critical, retrospective medical opinions alone will usually not suffice to establish disability unless the claimed disability date is corroborated). Furthermore, the ALJ considered that Dr. Poetz relied on Plaintiff's "verbal representations which were inconsistent with the rest of the record," and that the evaluation was made upon a referral from Plaintiff's lawyer in support of a disability claim, rather than for purposes of ongoing medical treatment. (Tr. 836) Finally, Dr. Poetz opined that Plaintiff was disabled. The ALJ properly accorded this conclusion no weight because it is reserved to the Commissioner. Cox v. Astrue, 495, F.3d 614, 619 (8th Cir. 2007).

### 3. Substantial Evidence Supports the Light Work Categorization

Based upon the credibility analysis and the medical evidence that was discussed above, the ALJ formulated an RFC for light work. This conclusion is supported by substantial evidence. Diagnostic tests and other substantial medical evidence—including MRIs and x-rays—indicated Plaintiff suffered from only mild back and coronary issues. See Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (ALJ's RFC finding that plaintiff can perform light work was proper where it was supported by some medical evidence, including diagnostic tests showing only mild degenerative changes and normal examination results). Consistent with these mild diagnoses, the medical care that Plaintiff received was conservative, suggesting symptomology consistent with an RFC for light work. Additionally, and as noted above, Plaintiff was not even compliant in this lesser treatment plan, such as pain management and physical therapy. Regarding Plaintiff's mental impairments, it is also relevant that once Plaintiff did finally seek out treatment, the records indicate that he responded positively to that treatment. (Tr. 432-33) This also supports the ALJ's RFC determination. Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009) ("impairments that are controllable or amenable to treatment do not support a finding of disability").

Finally, the fact that there was a credible medical source opinion suggesting that Plaintiff could perform medium work tends to suggest that Plaintiff could perform light work.  This is in accord with common sense and 20 C.F.R. § 404.1567(c) ("if someone can do medium work, we determine that he or she can also do sedentary and light work").

In this case, the ALJ considered the entire record, including objective medical findings, the effectiveness of treatment, failure to seek treatment, daily activities, and medical source opinions.  This evidence, taken as a whole, supports the ALJ's determination that Plaintiff could perform the range of light work identified.

The Court is mindful that its task is not to determine Plaintiff's RFC anew.  Instead, this Court looks to determine whether the conclusion of the ALJ is within the "zone of choice" permitted to the Commissioner.  See Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) ("stating that "[a]n ALJ's decision is not outside the zone of choice simply because [the court] might have reached a different conclusion had [the court] been the initial finder of fact").  Although Plaintiff articulates a rationale for reaching a different conclusion, the ALJ's decision, on the record before this Court, is supported by substantial evidence because it is one that "a reasonable mind [could find] adequate to support the commissioner's conclusion."  Krogmeier, 294 F.3d at 1022.

### C.  **The ALJ's Function-by-Function Analysis Complied with the District Court's Remand Order, and is Supported by Substantial Evidence**

A final issue is whether the ALJ's function-by-function analysis complied with the Court's remand order concerning the function-by-function analysis in this case. The relevant language of the District Court's Memorandum and Order were:

> The Court finds that the ALJ did not sufficiently provide the required residual functional assessment in this case…. The ALJ's RFC determination merely stated that Claimant has the RFC to perform the full range of sedentary work.  The ALJ did not make any specific findings regarding Claimant's limitations with lifting,

carrying, pushing, pulling sitting, standing, walking, or any other exertional requirement. On remand, the ALJ shall provide a function-by-function assessment of Claimant's physical limitations and fully and fairly develop the record.

(Tr. 914)

Plaintiff argues that, because the ALJ did not specifically find limitations regarding pushing and pulling (although the ALJ did make specific findings regarding lifting, carrying, standing, walking, and sitting), she did not comply with the District Court's remand order, and the RFC is unsupported by substantial evidence. The Court disagrees.

The District Court's order must be seen in the context of the decision that it was reviewing. When the second ALJ issued his ruling in 2009, he found simply that Plaintiff had the RFC to engage in "the full range of sedentary work" found in the regulations. The District Court interpreted this to mean that the ALJ had not made any particular findings with regard to any exertional limitations. The language of the previous order made clear that the District Court wanted to make sure that the ALJ would carefully consider any applicable exertional limitations in constructing the RFC. The language of the Order—"lifting, carrying, pushing, pulling, sitting, standing, walking, *or any other exertional requirement*" gives only examples of the exertional limitations that the ALJ should look at, rather than an exhaustive and comprehensive list. Thus, the failure to specify one of the limitations on that list would not violate the Court's order where it is clear that the ALJ considered all of the relevant exertional limitations upon remand.

Apart from the argument of whether the RFC findings complied with the District Court's remand order, Plaintiff argues that, as a general matter, an RFC which lacks a pushing and pulling finding lacks substantial evidence. This argument is foreclosed by <u>Depover v. Barnhart</u>, 349 F.3d 563 (8th Cir. 2003). In <u>Depover</u>, the plaintiff argued that where the ALJ failed to make a finding regarding Plaintiff's residual capacity to sit, stand, and walk, that the RFC was legally

deficient.  The Eighth Circuit rejected this argument, holding that "although we would have preferred that [the ALJ] had made specific findings as to sitting, standing, and walking, we do not believe that [the ALJ] overlooked those functions.  We think instead that the record reflects that the ALJ implicitly found that Mr. Depover was not limited in these areas."  Id. at 567.

Similarly here, the ALJ went into detail about the exertional and postural limitations of Plaintiff, realizing that the case was on remand from the District Court for precisely that reason. Although this Court would have preferred that the ALJ list findings for all of the examples that the Court listed in its remand order, this Court is satisfied that the ALJ did not overlook those functions. The ALJ implicitly found that Plaintiff was not limited in his ability to push and pull. See Depover, 349 F.3d at 567.  Further, this finding is supported by Dr. Stoecker's findings that Plaintiff had an "unlimited ability" to push and pull.  (Tr. 410-15)

More fundamentally, it is clear from the record that the ALJ, upon remand from the District Court, seriously considered the functional limitations of Plaintiff in light of the evidence. This is shown by the detailed examination of the plaintiff's abilities to engage in exertional activities—and all of the ALJ's conclusions in this regard are supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

/s/ John M. Bodenhausen
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of August, 2015